UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 3:09-cr-00062 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| MICHAEL JAMES LEWIS, | ) | [Re:  Motion at doc. 22] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 22, the United States moved for an order excluding defendant's proposed expert testimony at the sentencing hearing in this case.  Defendant Lewis filed a response at docket 30, and plaintiff's reply was filed at docket 33.  Oral argument would not assist the court.

## II.  DISCUSSION

Lewis pled guilty to three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Some of the methamphetamine was d-methamphetamine, a substance which delivers a powerful "high."  Some of the methamphetamine was l-methamphetamine, a substance which does not provide the dramatically altered state of consciousness desired by drug users. Because those who manufacture illicit methamphetamine are sometimes inept, they sometimes produce l-methamphetamine when attempting to produce d-methamphetamine.

Lewis wants to provide testimony from Dr. Louis G. Jambor, Scientific Director of Toxicology for Specialty Laboratories.  As Lewis explains it, "In particular, Dr. Jambor

will testify that l-methamphetamine has little or no affect on the central nervous system and thus does not produce a release of dopamine, serotonin and norepinephrine that results in the intense "high" or felling [sic] of euphoria that is caused by the use of d-methamphetamine."[1]

It is the government's position that Dr. Jambor's testimony is not relevant to the exercise of the court's sentencing discretion. For purposes of the advisory Sentencing Guidelines, the government is correct. Lewis concedes "that the 1995 amendment [to the Guidelines] abolished the distinction between d- and l- methamphetamine. "[2] Lewis contends, however, that the Guideline amendment did not make clear that when assessing the quantity of actual methamphetamine in a mixture and substance containing methamphetamine, d- and l- methamphetamine would be treated the same way. The contention is pure sophistry. There being no difference between the two types of methamphetamine under the Guidelines, calculating an actual methamphetamine volume consisting of l-methamphetamine for application of the Guidelines is correct.

Lewis also argues that the court should consider the difference between the two types of methamphetamine when considering the factors set out in Section 3553(a) of Title 18 of the United States Code. However, if, as the court believes the case to be, the only reason Lewis possessed l-methamphetamine to distribute to others was that the manufacturing process had been inadvertently botched, there is no logical reason to consider the difference between the two chemicals and no reason to hear from Dr. Jambor. If, but only if, Lewis lays a foundation that would make his possession of and intent to distribute the l-methamphetamine relevant will the court hear from Dr. Jambor. Laying such a foundation would require credible evidence that Lewis knew the substance he possessed was l-methamphetamine not d-methamphetamine, that Lewis had access to a market in which buyers of illegal substances actually wanted to

---

[1] Doc. 30 at p. 2.

[2] *Id.*

purchase l-methamphetamine rather than d-methamphetamine, and that Lewis intended to provide the l-methamphetamine desired by that class of buyers.

### III.  CONCLUSION

For the reasons above, the motion at docket 22 is **GRANTED.**  In the highly unlikely event that Lewis presents credible evidence which lays the foundation discussed above, then, notwithstanding that the motion has been granted, Dr. Jambor will be heard.

DATED at Anchorage, Alaska, this 10th day of November 2009.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE